**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Allen SIMMONS, Jr., Defendant-Appellant.**

**No. 83–2051 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1983.

---

See also 690 F.2d 903.

Patrick L. McGuire, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellant was convicted on April 20, 1981 of conspiracy to possess marijuana with intent to distribute (in violation of 21 U.S.C. § 846) and of possession of 102 pounds of marijuana with intent to distribute (in violation of 21 U.S.C. § 841(a)(1)). This Court summarily affirmed the conviction in October, 1982. *United States v. Simmons,* 690 F.2d 903 (5th Cir.1982). Rehearing was denied in November, 1982. The following month, appellant claimed to discover new evidence, and he therefore filed a motion in district court for new trial pursuant to F.R. Crim.P. 33. The district court denied the motion. Appellant now brings this appeal, arguing that the district court abused its discretion by denying the motion and by denying appellant an evidentiary hearing.

A motion for a new trial can ordinarily be ruled upon without conducting an evidentiary hearing. *See, e.g., United States v. Metz,* 652 F.2d 478, 481 (5th Cir. 1981); *United States v. Hamilton,* 559 F.2d 1370, 1373 (5th Cir.1977); *United States v. Curry,* 497 F.2d 99 (5th Cir.1974), *cert. de-*

*nied,* 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311 (1974). In this case in particular, an evidentiary hearing was patently unnecessary. The only "new" evidence was a letter written by the appellant's son, "Bubba," who had previously been convicted on possession charges in the same marijuana scheme.[1] The letter was attached to the motion for a new trial, and we are confident that the district court could read and consider the "new" evidence without holding an evidentiary hearing to do so.

After reading the letter, the district court denied the appellant's motion. District judges have considerable discretion with respect to Rule 33 motions. *United States v. Riley,* 544 F.2d 237 (5th Cir.1976), *cert. denied,* 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977); *Hudson v. United States,* 387 F.2d 331 (5th Cir.1967), *cert. denied,* 393 U.S. 876, 89 S.Ct. 172, 21 L.Ed.2d 147 (1968). Accordingly, denials of such motions will be reversed only where " 'the ruling was so clearly erroneous as to constitute an abuse of discretion.' " *Metz,* 652 F.2d at 479, *quoting United States v. Antone,* 603 F.2d 566, 568 (5th Cir.1978).

Before a movant can prevail on a motion for a new trial, he must show each of the following: (i) that the evidence is in fact newly discovered and was unknown to the defendant at the time of the trial; (ii) that the evidence is material; (iii) that the evidence would probably produce a different result at a new trial; and (iv) that failure to learn of the evidence at an earlier date was not due to a lack of diligence on the part of the defendant. *United States v. Mack,* 695 F.2d 820, 822 (5th Cir.1983); *An-*

*tone,* 603 F.2d at 568–69; *United States v. Rodriguez,* 437 F.2d 940, 941 (5th Cir.1971).

The single letter written by the appellant's son must, therefore, satisfy all of the *Rodriguez* criteria. The district court found that it did not. First, the court observed that the appellant did not allege that he had exercised the requisite due diligence; second, the court acknowledged that the letter would serve only to impeach a government witness; finally and most importantly, the court pointed out that the evidence would not be likely to lead to an acquittal at a new trial. Because we agree that the letter would not be likely to produce a different outcome, and because the trial judge was entitled to be especially wary of the source of the evidence, we affirm.

"Bubba" Simmons, the author of the letter, has already served his sentence for possession. He has, then, very little to lose by writing a letter which seeks to exonerate his father. The trial judge here, like the district court in *La Duca,* could well ". . . view with some skepticism a motion for a new trial based on 'newly discovered evidence' which exists only because a convicted defendant . . . comes forward later with an affidavit in which he states that he is [now] prepared to exculpate his co-defendant. Such a claim is inherently suspect." *United States v. La Duca,* 447 F.Supp. 779, 782, (D.C.N.J.1978), *aff'd,* 587 F.2d 144 (3d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1978). We are mindful of that district court's admonition that once sentence has been imposed on a co-defendant, ". . . there is very little to deter the . . .

---

1. Simmons was convicted of conspiracy and possession. Bubba's letter, which is four single-spaced typewritten pages long, denies that his father was a member of the conspiracy. The letter insists that the elder Simmons knew only what Bubba told him, and that Bubba told him lies: "My father did not have any kind of knowledge nor any type of participation in my actions with Lancaster [a coconspirator who turned informant and was the prosecution's star witness at the trial of Simmons] . . . the only thing which my father knew was the story that I had told him which was a lie."

Aside from the fact that the letter does not explain how Simmons came to possess the marijuana, the primary assertion that the father is an innocent victim of this conspiratorial scheme is starkly at odds with the testimony of a coconspirator which was offered at Simmons' trial. Ultimately, the letter is a bald, uncorroborated, conclusory statement by a son that his father "didn't do it." The problem with that, apart from the issues discussed in the text of this opinion, is that the father was convicted at his trial precisely because there was evidence and testimony which strongly suggested that "yes he did."

co-defendant from untruthfully swearing out an affidavit in which he purports to shoulder the entire blame." *La Duca, supra,* at 783.

If the co-defendant in *La Duca* had little to lose, Bubba has even less since his statement is not even sworn. Consequently, it would be necessary for the appellant to call upon Bubba to testify at any new trial, but there has been no assurance made that he would in fact be called or, if called, would testify. Indeed, since Bubba was not previously indicted for conspiracy (he was indicted and convicted only for possession), and since his testimony could well subject him to prosecution on that conspiracy charge, there are strong reasons for believing that he would not be called as a witness or would claim his privilege.

Even if Bubba were to assume the risk and testify, however, appellant has not demonstrated that his son's testimony would produce a different result at the new trial. Bubba's statement would, for one thing, be impeachable due to his prior drug conviction. *See* Fed.R.Evid. 609. More important, the letter is at variance with the testimony offered by the appellant's co-conspirator at the conspiracy trial, and that testimony was corroborated by a taped conversation in which the appellant made the incriminating admission that he supplied money to finance the drug purchase. How this newly discovered letter will silence that admission we are not told.

Appellant has not even convinced us that the district court was wrong, much less that its ruling was so clearly erroneous as to constitute an abuse of discretion. Accordingly, the denial of appellant's motion for a new trial was correct.

AFFIRMED.